UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SEBASTIEN POCHAT and TONI POCHAT, | ) ) ) | CIV. 08-5015-KES |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND REQUEST FOR ORAL ARGUMENT |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | [DOCKET 28] |
| Defendant. | ) ) | |

**INTRODUCTION**

This matter is before the court pursuant to a motion for a protective order and request for oral argument filed on October 7, 2008, by defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"). [Docket 28].  Plaintiffs Sebastien and Toni Pochat resist State Farm's motion in its entirety.  [Docket 39].  State Farm has represented to the court that it has made a good-faith effort to resolve this dispute without the court's intervention. [Docket 42]  State Farm's motion for a protective order and request for oral argument was referred to this magistrate judge for resolution pursuant to Chief Judge Karen E. Schreier's order dated November 3, 2008.  [Docket 34].

**FACTS AND PROCEDURAL HISTORY**

The court will limit the following recitation to those facts relevant to this discovery dispute.  This case is a diversity action removed to this district from

the Seventh Judicial Circuit, Pennington County, South Dakota.  See Docket 1.
On January 22, 2008, Sebastien and Toni Pochat brought suit against State
Farm, alleging breach of contract and bad faith insurance practices on the part
of State Farm.  Id., part 3.  This action stems from a motor vehicle accident
that occurred on August 28, 2003, in Colorado between the Pochats and
Jimenez Bernal Humberto, an uninsured motorist who negligently rear-ended
the Pochats' vehicle.  Id.  Sebastien Pochat was driving and Toni Pochat was a
passenger in their vehicle.  Id.  As a result of this collision, the Pochats allege
that they sustained severe personal injuries, pain and suffering, and loss of
enjoyment of life.  Id.  The Pochats state that they have incurred substantial
medical expenses as a result of the collision and will likely incur additional
expenses in the future.  Id.

The Pochats had an insurance policy with State Farm that provided for
coverage for personal injuries and damages caused by uninsured and
underinsured motorists.  Id.  The Pochats submitted their uninsured motorist
claims to State Farm, who paid $14,500.00 to Toni Pochat and $25,000.00 to
Sebastien Pochat.  See Docket 6.  State Farm alleges that it notified the
Pochats that these two payments were settlement offers intended to settle their
uninsured motorist claims.  Id.  State Farm alleges that, by cashing the two
checks, the Pochats accepted the settlement offers in full.  Id.

The Pochats allege that State Farm is in breach of contract for refusing to

2

pay all of their medical expenses and benefits for past, present, and future pain and suffering and loss of enjoyment of life.  See Docket 1, part 3.  The Pochats also allege that State Farm has acted in bad faith by taking the following actions: refusing to pay promptly the Pochats' uninsured motorist claims in full; failing to provide the Pochats with their client file upon written request; failing to advise the Pochats of available supplemental insurance policies; collecting separate premium payments from the Pochats for separate benefit coverages while attempting to collect double subrogation benefits; failing to reasonably investigate the Pochats' personal injury claims through review by a medical doctor, thereby unreasonably delaying payment of benefits and forcing the Pochats to accept unreasonable payments to offset their "dire financial need"; unreasonably using a computer software claims adjusting program to delay and undervalue the Pochats' claims; and failing to pay outstanding medical bills incurred by the Pochats.  Id.  The Pochats seek an award of punitive damages, actual and compensatory damages, attorney fees and costs, and prejudgment interest.  Id.

State Farm denies the Pochats' claims in their entirety and asserts numerous affirmative and other defenses.  See Docket 6.  State Farm argues that the Pochats fail to state a claim upon which relief may be granted and moves to dismiss the complaint on the ground that the Pochats' claims were settled when they cashed the checks for $14,5000.00 and $25,000.00.  Id.

State Farm also argues that the Pochats' claims are barred or are limited by the following: the doctrine of accord and satisfaction, the Pochats' own contributory negligence, the Pochats' assumption of the risk, and the Pochats' failure to mitigate damages.  Id.

On or about May 13, 2008, the Pochats served State Farm with two sets of requests for the production of documents.  See Docket 30, Exhibit B.  On or about June 16, 2008, State Farm served its responses to the Pochat's discovery requests, objecting to each discovery request on various grounds, one of which was that much of the information requested was "confidential, proprietary, trade secret, or otherwise commercially sensitive."  See Docket 39, Exhibits B & C.  The parties discussed several proposed confidentiality and protective orders, but were unable to come to an agreement.  See Docket 39, part 1.

On October 7, 2008, State Farm filed a motion for protective order and request for oral argument.  See Docket 28.  State Farm moves the court for a protective order prior to producing the following categories of information: "(1) all documents contained in the personnel files of the claim handlers in charge of Plaintiffs' claims as well as persons in the chain of command above these claim handlers; (2) documentation regarding how employees qualify for salaries, bonuses, incentives, benefits and commissions; (3) claims handling, policies, practices and procedures; (4) training materials; and (5) documentation relating to efforts to increase claim department profitability and

4

decrease loss rations or claims severity costs." <u>See</u> Docket 29.  State Farm alleges that such information is confidential and/or trade secret, subject to the safeguards of a protective order prior to disclosure.  <u>Id.</u>  State Farm maintains that "at this point...Defendant will be producing the requested information as long as it is subject to a protective order." <u>See</u> Docket 40.

The Pochats argue that State Farm is not entitled to a protective order because the "simple payment of insurance claims does not involve any trade secrets or proprietary information" and the "entire subject of paying insurance claims is a matter of state regulations and public scrutiny." <u>See</u> Docket 39. The only issue before the court is whether a protective order is appropriate in this case with regard to the categories of information listed above.[1]

---

[1]In their response to State Farm's motion for a protective order, the Pochats raise additional discovery issues that will not be addressed in this order.  Particularly, the Pochats challenge State Farm's objections that the Pochats' requests for production of documents are overly broad and burdensome, vague and ambiguous, and irrelevant.  <u>See</u> Docket 39.  As State Farm has indicated that, at this point, it intends to produce the requested information as long as a protective order is in place, <u>see</u> Docket 40, the Pochats' concerns are premature and may be raised in a subsequent motion to compel.  The Pochats also raise the issue of the underwriting files for their policies and move the court to require disclosure of this information.  <u>See</u> Docket 39.  This issue was not raised by State Farm in its motion for a protective order, and, thus, the court will not address it in this opinion.  Again, the Pochats may file a separate motion to compel if necessary on this issue.  Finally, the Pochats request disclosure of documents and billing statements in the possession of the Morgan Theeler law firm.  <u>See</u> Docket 39.  This issue was not raised by State Farm in its motion for a protective order, and, thus, the court will not address it in this opinion.  The Pochats must file a separate motion to compel and supporting memorandum of law with the court if they wish to raise this issue for the court's determination.

**DISCUSSION**

**A.    Standards Governing Requests for Protective Orders**

Federal Rule of Civil Procedure 26(c) governs the granting of a protective

order by the court, as follows:

(c) Protective Orders.

(1) In General. A party or any person from whom discovery is
sought may move for a protective order in the court where
the action is pending–or as an alternative on matters relating
to a deposition, in the court for the district where the
deposition will be taken. The motion must include a
certification that the movant has in good faith conferred or
attempted to confer with other affected parties in an effort to
resolve the dispute without court action. The court may, for
good cause, issue an order to protect a party or person from
annoyance, embarrassment, oppression, or undue burden or
expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the
disclosure or discovery;

(C) prescribing a discovery method other than the one
selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting
the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while
the discovery is conducted;

(F) requiring that a deposition be sealed and opened
only on court order;

(G) requiring that a trade secret or other confidential
research, development, or commercial information not
be revealed or be revealed only in a specified way; and

6

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) Ordering Discovery. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

(3) Awarding Expenses. Rule 37(a)(5) applies to the award of expenses.

See Fed R. Civ. P. 26(c).

The trial court has significant discretion in either granting or denying a protective order, and "only an abuse of that discretion would be cause for reversal." Gen. Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973). Under Rule 26(c), a court may grant a protective order only upon a showing of good cause by the moving party. Id. The movant must articulate "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (additional citation and quotation marks omitted); see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (additional citations and quotation marks omitted).

In Pansy, The Third Circuit set forth a thoughtful analysis of the good-cause standard that this court finds instructive. Although Pansy dealt

7

specifically with the issue of whether the trial court abused its discretion in first granting and then subsequently refusing to modify a confidentiality order over a settlement agreement, confidentiality orders over matters concerning stages of litigation and protective orders over discovery are "functionally similar, and require similar balancing between public and private concerns." Pansy, 23 F.3d at 786.

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process.... [T]he court ... must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
>
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7).... Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

Id. at 787 (additional citations omitted).

The balancing test requires courts to consider a variety of factors to determine if a protective order is appropriate. Id. at 789. These factors, discussed below, "are unavoidably vague and are of course not exhaustive" so

as to provide courts with "the flexibility needed to justly and properly"

resolve discovery disputes.  Id.

> One interest which should be recognized in the balancing process
> is an interest in privacy.  It is appropriate for courts to order
> confidentiality to prevent the infliction of unnecessary or serious
> pain on parties who the court reasonably finds are entitled to such
> protection.  In this vein, a factor to consider is whether the
> information is being sought for a legitimate purpose or for an
> improper purpose.  However, privacy interests are diminished
> when the party seeking protection is a public person subject to
> legitimate public scrutiny.

> While preventing embarrassment may be a factor satisfying the
> "good cause" standard, an applicant for a protective order whose
> chief concern is embarrassment must demonstrate that the
> embarrassment will be particularly serious.  As embarrassment is
> usually thought of as a nonmonetizable harm to individuals, it may
> be especially difficult for a business enterprise, whose primary
> measure of well-being is presumably monetizable, to argue for a
> protective order on this ground.

> Circumstances weighing against confidentiality exist when
> confidentiality is being sought over information important to public
> health and safety and when the sharing of information among
> litigants would promote fairness and efficiency.

> A factor which a court should consider in conducting the good
> cause balancing test is whether a party benefitting from the order
> of confidentiality is a public entity or official. Similarly, the district
> court should consider whether the case involves issues important
> to the public.... [I]f a case involves private litigants, and concerns
> matters of little legitimate public interest, that should be a factor
> weighing in favor of granting or maintaining an order of
> confidentiality.

Id. at 787-88 (internal quotation marks, footnotes, and citations omitted).

When dealing with sensitive or proprietary information, courts routinely

grant protective orders that limit who may access the disclosed information

9

and how the disclosed information may be used.  Id. at 787 (additional citation

omitted).  Rule 26(c) confers " 'broad discretion on the [district] court to decide

when a protective order is appropriate and what degree of protection is

required.' "  Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter

No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Seattle Times Co. v.

Rhinehart, 467 U.S. 20, 36 (1984)).

**B.     Personnel Records and Compensation Paid to Employees**

State Farm requests safeguards to be in place prior to disclosing the

following information: (1) "[t]he personnel files for each employee, manager,

supervisor, or other agent of State Farm who was involved with Plaintiff's

claim"; (2) "[a]ll human resources manuals, salary administration manuals,

personnel bulletins or manuals, orientation booklets, directives memos, or

other documents in use since 1997 to inform claims personnel of the manner

in which they can expect to get salary increases, bonuses or commissions"; (3)

"[a]ll documents relating to performance goals and how they relate to

manager's bonuses, for the past ten years"; (4) "[a]ll documents which relate to

incentives given to claims personnel in return for reducing the amount of

claims payments, reducing combined ratio, reducing claim severity and

reducing claims payments"; and (5) "[a]ll documents which relate to incentives

given to claims personnel in return for overall reductions in office, department,

10

branch, or company loss rations, claim severity, average claims payments, or reduction in claim payments of any kind." [Docket 40].

The district court for the District of Pennsylvania directly addressed this issue in Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169 (E.D.Pa. 2004),[2] a case where plaintiff sued defendant for breach of contract and bad-faith insurance for terminating plaintiff's disability benefits. Id. at 172. In Saldi, defendant sought a protective order to prevent disclosure of the following information: "the personnel files and performance reviews of the employees who handled Plaintiff's claim and their supervisors, including a description of their jobs, training records, personnel evaluations, goal setting documents, and disciplining or rewarding documents, as well as information regarding participation in incentive plans, and their scope of authority in relationship to each other and the plaintiff." Id. at 184. Defendant also sought a protective order to prevent disclosure of employee performance evaluations, information regarding the criteria and process used to evaluate employee performance, information regarding employee award and financial bonus programs, and training materials used to train the employees who handled plaintiff's claim. Id. at 184-186.

---

[2]Although Saldi is not controlling authority in this district, this court finds the opinion persuasive given that both Saldi and the Pochat's case are factually similar. Both cases involve bad-faith insurance and breach of contract claims, and both cases involve discovery disputes over similar categories of information.

Finding such information to be relevant to plaintiff's bad-faith insurance and breach of contract claims, the court ordered the defendant to disclose the information.  Id.  However, recognizing that the requested information implicated defendant's confidential and proprietary business practices and policies, the court ordered the plaintiff not to disclose or exchange the information with anyone not associated with the case.  Id. at 178.  The court further ordered that the plaintiff not use the information for any other purpose than litigating the instant lawsuit without prior permission from the court.  Id. at 178; see also Dahdal v. Thorn Americas, Inc., 1997 WL 599614 at *1(D. Kan. Sept. 15, 1997) (court entered limited protective order for personnel files of employees because employees were non-parties to the suit, files commonly contain sensitive, personal information with little or no relevance to the suit, and widespread dissemination of such information could result in economic or emotional harm to the employees); Williams v. Bd. of County Comm'rs, 2000 WL 133433 at *1 (D.Kan. Jan. 21, 2000) (for the general proposition that "personnel files and records are confidential in nature and that, in most circumstances, they should be protected from wide dissemination").

Similarly, this court finds that State Farm's request for safeguards to be in place prior to disclosing the above information is reasonable.  The court need not address, at this time, whether such information is discoverable under the Federal Rules of Civil Procedure because State Farm has indicated that it

intends to disclose the information to the Pochats.  See Docket 40.  Under the balancing test, the court finds that State Farm has met its burden in establishing good cause for a limited protective order.  The potential harm to State Farm of unrestricted disclosure of confidential information outweighs the public interest in disclosure.  See Pansy, 23 F.3d at 787.  As attested to by State Farm through affidavit, personnel files contain the employees' confidential information.  See Docket 30, part 1.  These employees are not parties to this lawsuit, but rather are private individuals with legitimate privacy concerns.  Further, documents pertaining to how State Farm awards financial incentives and bonuses implicate State Farm's business practices.  State Farm has attested that such information is unique to its organization and that considerable time, expense, and effort were expended to create such materials–materials that competitors could potentially duplicate to the detriment of State Farm.  See id.

Finally, the Pochats have not shown, substantively and concretely, how their interests would be harmed by a limited protective order.  Such an order would not prevent the Pochats from obtaining the information relevant to their claims, but rather would merely prevent said information from being disseminated to third parties.

**C.   Claims Handling Documents and Training Materials**

State Farm also requests safeguards to be in place prior to disclosing the following information: (1) "[a]ll claims manuals used in the handling of claims at State Farm"; (2) "[a]ll documents which relate to policies, procedures or guidelines concerning the investigation of underinsured motorist claims or issues at State Farm"; (3) "[a]ll manuals, policies, procedures, training materials or guidelines that relate to any computer system used in State Farm's claims operation"; (4) "[a]ll training materials provided to claims personnel at State Farm for handling underinsured motorist claims"; and (5) "[a]ll documents relating to efforts or goals to decrease loss ratios, or decrease claim severity costs over the past 10 years." See Docket 40.  State Farm argues that the above documents are trade secrets.

Under Rule 26(c), courts may grant protective orders to prevent or limit the disclosure of trade secrets or "other confidential research, development, or commercial information."  Fed. R. Civ. P. 26(c)(1)(G).  The importance of protecting trade secrets is explained by the Eighth Circuit:

> Confidential business information has long been recognized as property.  Because of the intangible nature of a trade secret, however, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others.  Public disclosure of trade secrets extinguishes the owner's property rights.

In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991) (internal quotation marks and citations omitted).

14

Rule 26(c) thus serves to facilitate disclosure of sensitive information that parties may be reluctant to disclose without protection.  "If they suspect that their trade secrets may fall into the wrong hands, parties may be uncooperative with respect to discovery requests.  Assuring the safety of these sensitive disclosures often has the effect of encouraging the apprehensive litigants to fully cooperate with the discovery process."  Andrew Corp. v. Rossi, 180 F.R.D. 338, 340 (N.D.Ill. 1998) (citing In re Krynicki, 983 F.2d 74, 75 (7th Cir. 1992)).

The burden rests on the party opposing discovery, here State Farm, to show that a protective order is warranted for trade secret information.  In re Remington Arms Co., Inc., 952 F.2d at 1032.  To meet its burden, State Farm must show (1) that the information qualifies for protection, that is, that the information is confidential or trade secret and (2) that State Farm would be harmed by disclosure of the information.  Id.  Courts look to applicable state law to determine if the requested documents qualify as trade secrets.  Id. at 1033.

The South Dakota Uniform Trade Secrets Act, codified at SDCL § 37-29-1, defines a trade secret as follows:

> (4) "Trade secret," information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

            (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

See SDCL § 37-29-1(4).

      Once State Farm shows that the information requested constitutes a trade secret, the burden then shifts to the Pochats "to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." In re Remington Arms Co., Inc., 952 F.2d at 1032. If the Pochats show both relevance and need, then the court "must weigh the injury that disclosure might cause to the property against [the Pochats'] need for the information." Id. If both parties satisfy their respective burdens of proof, the court must issue a protective order to safeguard the rights of the parties, taking into account the following considerations:

> First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. Second, the protective order should limit the persons who are given access to the trade secrets. Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents. Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of the trade secrets. Finally, the protective order may designate an attorney to serve as a custodian for all confidential documents.

Id. at 1033 (internal citations omitted).

      The exact issue before this court was addressed by the Southern District of Indiana in Hamilton v. State Farm Mut. Auto. Ins. Co., 204 F.R.D. 420

16

(S.D.Ind. 2001).[3]  In <u>Hamilton</u>, plaintiff was involved in a rear-end collision and sustained multiple injuries.  <u>Id.</u> at 421.  Insured by State Farm, plaintiff submitted claims for medical treatment expenses.  <u>Id.</u>  Plaintiff alleges that State Farm unreasonably delayed the review and payment of some medical bills while arbitrarily denying payment of other medical bills.  <u>Id.</u>  Consequently, plaintiff sued State Farm for breach of contract, bad-faith insurance, and intentional infliction of emotional distress.  <u>Id.</u>  Plaintiff sought discovery of information concerning State Farm's claims handling policies, practices, and procedures, in response to which State Farm filed a motion for a protective order on the ground that such information consisted of confidential and proprietary business information and was a trade secret.  <u>Id.</u>  State Farm intended to disclose the information[4] but requested certain safeguards to

---

[3]Although <u>Hamilton</u> is not controlling authority in this district, the analysis of the <u>Hamilton</u> court and its underlying decision are instructive given the nearly identical facts to the Pochats' case.

[4]In <u>Hamilton</u>, State Farm sought a protective order to prevent disclosure of the following information to *non-parties*: "(1) a copy of all claim manuals and handbooks concerning standard or recommended procedures in handling or payment of claims; (2) a copy of each memorandum, written statement of policy, policy guidelines, administrative bulletin, or other writings disseminated to employees involved in claims administration on any subject related to the procedures of the administration, evaluation, determination, or payment of medical claims; (3) a copy of all training manuals in the training of adjusters, claims representatives, claims adjudicators, claims examiners, claims supervisors, or claims managers; and (4) copies of all 1099s from 1995 to the present given to any medical review company, doctor, and medical personnel that reviewed any of [plaintiff's] medical records and/or bills."  <u>Hamilton</u>, 204 F.R.D. at 423.  Much of this information is identical to the information sought

prevent widespread dissemination of sensitive and valuable information.  Id.
Rejecting the protective order proposed by State Farm, the court nonetheless
found good cause for the entry of a modified or limited protective order.  Id. at
421-22.

The court held that State Farm, through affidavit, established that the
requested information constituted a trade secret under state law.[5]  Id. at 423.
State Farm had demonstrated that "(1) the claims handling procedures and
materials were developed with considerable time, effort, and expense, thus
possess[ing] economic value; (2) the materials were developed, created, and
maintained for business use and considered confidential and proprietary; (3)
the documents contain claims handling philosophies and strategies unique to
State Farm; (4) access of the materials by a competitor would result in
economic value to the competitor and place it in a competitive advantage; and
(5) the materials are in locking file cabinets and/or in areas not open to the
public."  Id.

The court also found that State Farm had demonstrated a "clear danger"
if competitors discovered its trade secrets.  Id. at 424.  State Farm attested that
competitor companies could appropriate its trade secrets by duplicating or

by the Pochats and that is the subject of State Farm's current motion.

[5]The definition of a trade secret under Indiana state law is identical to
that under South Dakota law.  See Hamilton, 204 F.R.D. at 423; see also
Ind. Code § 24-2-3-2.

reconstructing its claims handling procedures and that this information was particularly valuable to small insurance companies without resources to develop their own policies.  Id.  The court concluded that "the potential dangers State Farm faces if a competitor gains access to its trade secrets and confidential information outweigh any legitimate interest one may possess in obtaining these documents."  Id.  Thus, the court entered a protective order setting the following conditions: access to the protected information was limited to only the parties and counsel of record; use of the protected information was limited to the instant lawsuit; a motion to file documents under seal may be filed by either party if desired; the protected documents were to be destroyed or returned to counsel of record thirty days after completion of the litigation; a motion to seal a proceeding in which the protected information was introduced may be filed by State Farm; and plaintiff was required to immediately notify State Farm in the event of accidental or unintentional disclosure of the protected information to a third party and to make every effort to prevent further unauthorized disclosure.  Id. at 425; see also Adams v. Allstate Ins. Co., 189 F.R.D. 331, 333 (E.D.Pa. 1999) (in a lawsuit involving claims of bad faith-insurance and breach of contract arising from an automobile accident, the court ordered the defendant to disclose its claims manuals and training materials to the plaintiff, but also ordered plaintiff to keep the disclosed information confidential); Jones v. Nationwide Ins. Co., 2000 WL 1231402 at *4

(M.D.Pa. July 20, 2000) (same); McQueen v. Life Ins. Co. of North America, 2008 WL 4461936 at *5 (E.D.Ky. Oct. 1, 2008) (slip copy) (in lawsuit involving claim of ERISA violation arising from defendant's termination of plaintiff's long-term disability benefits, court deemed defendant's "claims and business information" to be trade secrets and entered a protective order restricting access to the parties).

     In the present case, State Farm declares by affidavit that information about its claims handling procedures and associated training materials are unique to its organization and are economically valuable as considerable time, effort, and expense were expended to develop these materials.  See Docket 30, part 1.  State Farm further attests that it makes every effort to maintain the secrecy of these materials by only disclosing them to its employees and only producing them pursuant to a protective order or confidentiality agreement in other litigation.  Id.  State Farm also attests that it would suffer financial harm from the unrestricted disclosure of this information because competing insurance companies could duplicate State Farm's claims handling policies, manuals, and procedures.  Id.  In light of these representations, State Farm has satisfied its burden of showing that the subject materials constitute trade secrets or other confidential research, development, or commercial information and that State Farm would be harmed by unrestricted disclosure.  See In re Remington Arms Co., Inc., 952 F.2d at 1032.

Because State Farm has stated that it intends to disclose the requested information subject to a protective order, the court need not, at this time, determine if the information is relevant and necessary to litigating the Pochats' claims. A limited protective order is appropriate in this case as it would satisfactorily protect both parties' interests– the Pochats would have access to the requested information, and competitors could not exploit or duplicate State Farm's internal policies and procedures. The Pochats have suggested no reason to doubt State Farm's assertion that access to the disclosed information by competitor companies would be detrimental to State Farm. Also persuasive is the fact that the Pochats have not shown, substantively or concretely, how their interests would be harmed by a limited protective order. Again, if State Farm continues to object to disclosure even after a protective order is in place, the Pochats may file a motion to compel before the court.

The court declines to adopt the protective order proposed by State Farm, see Docket 30, Exhibit A, because it allows the producing party to designate any material it believes, in good faith, to contain trade secrets or other confidential research, development or commercial information. The court is concerned that this broad language will serve to give each party "carte blanche to decide what portions of the record shall be kept secret." See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999). Rather, at this time, the court grants State Farm's motion for a protective order

21

only with respect to the categories of information identified in this opinion. State Farm may move the court for another protective order if necessary to protect other categories of information not yet identified.  The court further denies State Farm's request for oral argument.

## CONCLUSION

Good cause appearing, it is hereby

ORDERED that State Farm's motion for a protective order and request for oral argument [Docket 28] is granted in part and denied in part consistent with the above opinion.  The parties shall confer on the provisions of a protective order and, if an agreement is reached, shall file a stipulated protective order by December 30, 2008.  If the parties are unable to come to an agreement on the terms of the protective order, State Farm shall notify the court on or before December 30, 2008, and the court will enter a protective order of its own.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Crim. P. 58(g)(2). Failure to file timely objections will result in the waiver of the right to appeal

questions of fact.  Objections must be timely and specific in order to require review by the district court.

Dated December 11, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE