UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| TONI POCHAT, | ) | CIV. 08-5015-JLV |
| | ) | |
|     Plaintiff, | ) | ORDER GRANTING |
| | ) | SUMMARY JUDGMENT |
|   vs. | ) | |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
|     Defendant. | ) | |

## INTRODUCTION

Toni Pochat and her husband, Sebastien Pochat,[1] filed a complaint against State Farm Mutual Automobile Insurance Company ("State Farm") in Circuit Court for the Seventh Judicial Circuit, Pennington County, South Dakota. (Docket 1-3). Defendant moved the matter to federal district court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Docket 1). Pochats allege they held an automobile insurance policy with defendant which provided for first party uninsured motorist coverage ("UM"). (Docket 1-2, ¶¶ 8 and 9). Pochats allege on August 28, 2003, they were injured in an automobile collision with a vehicle which was uninsured. Id. at ¶¶ 3, 4, and 7. Pochats allege State Farm breached the insurance contract by failing

---

[1] On October 20, 2009, the court granted plaintiffs' unopposed motion to withdraw Sebastien Pochat as a party to this litigation. (Docket 67). Where appropriate, Pochats will be separately identified by their first names and any further reference to plaintiff will refer solely to Toni Pochat.

to pay all of the medical expenses and bodily injury damages in a fair and reasonable amount. Id. at ¶ 9. They also assert a claim of bad faith and seek punitive damages. Id. at pp. 4 and 7. State Farm admits the existence of the insurance policy, which includes the UM coverage, but denies the breach of contract and bad faith claims. (Docket 4).

Defendant filed a motion for summary judgment. (Docket 56). The motion for summary judgment is ripe for resolution.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will preclude summary judgment. Id. at 248. Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. At 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,

then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## FACTUAL SUMMARY

The following factual summary is drawn from the unopposed statements of undisputed material facts of both parties and those facts "viewed in the light most favorable to the [plaintiff] opposing the motion." Matsushita Elec. Indus. Co., 475 U.S. at 587. The facts material to defendant's motion for summary judgment are as follows.

Pochats were involved in an automobile accident in Colorado on August 28, 2003. (Docket 57, ¶ 1). The accident occurred when another

vehicle rear-ended Pochats' automobile. Id. at ¶ 2. Sebastien was the driver and Toni was a passenger in their vehicle. Id. at ¶ 3. At the time of the collision the other driver was an uninsured motorist. Id. at ¶ 4.

Pochats had an insurance policy with State Farm which provided coverage for injuries and damages caused by an uninsured motorist.[2] Id. at ¶ 5. Pochats purchased this policy as it was mandatory under South Dakota law for protection of themselves and their property in the event of any accident, and so they would have peace of mind in the event of a loss. (Docket 90, ¶ 3).

As a result of the accident, Toni suffered injuries and incurred medical expenses of about $9,000. (Docket 57, ¶¶ 7 and 80). Pochats' policy included medical payment coverage ("MPC") of $5,000 per person. While the record is not clear, it appears the MPC was fully paid out on Toni's medical expenses.[3]

Toni's physical injuries included pain in her head, chest, back, and neck. (Docket 70 ¶ 6). As of May 2, 2005, Toni reached maximum medical

---

[2]The per person UM coverage limit was $100,000. See Deposition of Robin Bryant. (Docket 89-9, p. 19).

[3]See Deposition of Robin Bryant. (Docket 89-9, p. 33).

improvement and sought no further medical treatment.  (Docket 57, ¶ 10.)[4]

At the time of the accident, Toni was not employed.  (Docket 79-6, pp. 1-2).

Plaintiff did not claim any loss of income as a result of the accident.  Id. at

p. 2.[5]  Plaintiff never made State Farm aware of her financial situation.

(Docket 57, ¶ 19).[6]

On May 2, 2005, Toni's attorney sent a letter to State Farm offering to settle her UM claim[7] for $225,000.  Id. at ¶ 9.  After that date, all

---

[4]Plaintiff objected to this statement of material fact.  See Docket 71, ¶ 10. However, plaintiff failed to comply with D.S.D. Civ. LR 56.1B which requires "appropriate citations to the record."  Defendant properly cited to plaintiff's deposition.  Toni testified that she had not sought medical treatment since sometime in 2005 and had never had a doctor render an opinion that she suffered a permanent injury.  (Docket 59-4, p. 10).  "A party should not be allowed to create issues . . . by contradicting [her] own earlier testimony." Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir. 1983).  Also, it is reasonable to assume plaintiff's attorney would not engage in settlement discussions unless and until the client had reached maximum medical improvement.

[5]See also plaintiff's attorney's letter of May 2, 2005, which does not include any claim for lost earnings.  (Docket 59-2 at pp. 11-15).

[6]Plaintiff objected to this statement.  See Docket 71, ¶ 19.  Again, plaintiff failed to comply with D.S.D. Civ. LR 56.1B.  Defendant properly cited to plaintiff's deposition in which she stated nothing was "sent to State Farm about evictions, failed marriage, or all these other strains on [her] life at that time that [she] thought were elements of [her] uninsured claim."  (Docket 79-6, pp. 4-5).  Plaintiff acknowledged State Farm would not have known of any financial struggle.  Id. at p. 7.

[7]As Toni's issue with State Farm revolves primarily around the UM coverage,  the use of the term "claim" will refer to the UM coverage unless otherwise noted.

communications between Toni and State Farm went through her attorney. Id. at ¶ 13.

On June 14, 2005, State Farm offered to settle[8] Toni's claim for $8,500. Id. at ¶ 14(a). On June 28, Toni offered to settle for $95,000. Id. at ¶ 14(b). On July 12, State Farm offered to settle for $9,500. Id. at ¶ 14(c). Toni reduced her offer to $30,000 and on July 13, State Farm offered to settle for $12,000. Id. at ¶ 14(d). Toni then offered to settle for $20,000 and on July 15, State Farm offered $13,500. Id. at ¶ 14(e). On July 18, State Farm increased its offer to $14,000. Id. at ¶ 14(f).

On July 19, 2005, by a telefaxed letter, Toni offered to settle for $18,500, which offer would remain open until the next day at 2 p.m. Id. at ¶ 14(g). State Farm responded by a letter dated July 21 and offered $14,100. Id. at ¶ 14(h). The next day, Toni faxed a letter offering to settle for $18,400. Id. at ¶ 14(i). State Farm's letter of July 26 offered to settle for $14,150. Id. at ¶ 14(j).

On July 27, 2005, Toni faxed a letter offering to settle for $16,500 and requested a response from State Farm by 4 p.m. (MDT). Id. at ¶ 14(k). That offer was renewed the next day with a request State Farm respond by July 29 at noon (MDT). Id. at ¶ 14(l). By a letter dated July 29, State Farm offered $14,250. Id. at ¶ 14(m).

---

[8]Plaintiff objects to State Farm's use of the word "settle," but would agree that State Farm offered to "pay" a sum, as plaintiff never signed a release. (Docket 71, ¶ 12). The court views this dispute as a distinction without a difference and will use the word "settle."

6

On August 2, 2005, Toni faxed a letter to State Farm indicating she would accept $14,500 to settle her UM claim so long as the check was sent by Federal Express. Id. at ¶ 14(n). On August 3, 2005, State Farm sent to Toni's attorney by Federal Express a check for $14,500, together with a letter indicating settlement of the UM claim. Id. at ¶ 14(o). Toni cashed the $14,500 check. Id. at ¶ 14(p).

## DISCUSSION

On January 22, 2009, nearly three and one-half years after settlement of her UM claim, plaintiff filed her complaint. (Docket 1-2). Plaintiff asserts State Farm breached the insurance policy by its failure to pay all of Toni's medical expenses and bodily injury damages in a "fair and reasonable amount." Id. at ¶ 9. Plaintiff also alleges that State Farm breached the contract by failing to pay the UM "benefits owed to Plaintiff[] for past, present and future pain and suffering and loss of enjoyment of life, to a fair and reasonable degree and amount . . . ." Id. at ¶ 10. The essence of plaintiff's bad faith claim is that State Farm "knew the [Pochats] were struggling financially, and used that fact to force an unreasonable UM claim payment to [Toni]." Id. at ¶ 17.

The relationship between Toni and State Farm is one based in contract. As Chief Judge Schreier wrote in the order denying defendant's motion to dismiss:

> Under South Dakota law, "a party may waive his right to sue if he accepts a settlement check for a disputed amount with full knowledge that the check is to act as complete payments [*sic*] for the debt." Drier v. Great American Ins. Co., 409 N.W.2d 357, 359

> (S.D. 1987), overruled on other grounds, Dunes Hospitality, L.L.C. v. Country Kitchen Int'l, Inc., 623 N.W.2d 484 (S.D. 2001). In the context of an insurance settlement, the same general rule applies. "[A]n insured's acceptance of a check from his insurance company in settlement of a disputed sum may constitute an accord and satisfaction." Id.

(Docket 32, pp. 5-6). Likewise, settlement of a UM claim is a contractual agreement. Drier, 409 N.W.2d at 359 ("an insured's acceptance of a check from his insurance company in settlement of a disputed sum may constitute an accord and satisfaction."). Under "special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract," a contract may be subject to recision for economic duress. Dunes, 623 N.W.2d at 489.

"[E]conomic duress . . . is a relatively recent outgrowth of the common law doctrine of duress." Id. at 480 (citing Drier, 409 N.W.2d at 360). The three elements of economic duress are:

1. One side involuntarily accepted the terms of another; and

2. That circumstances permit no other reasonable alternative; and

3. That said circumstances were the result of a coercive wrongful act of the opposite party.

Id. at 490. To prevail on an economic duress claim, a party must meet all three elements. Id.

To establish the first element of this test "[t]here must be a demonstration of acts on the part of the [insurer] which produced economic duress." Id. The plaintiff must prove the "duress resulted from the [insurer's] wrongful and oppressive conduct and not by plaintiff's necessities." Id.

The second element of the test "requires that the circumstances permit no other reasonable alternative. . . . In determining whether a reasonable alternative is available, [the court must] employ an objective test . . . . [and] the outcome depends on the circumstances of each case." Id. The plaintiff's access to an available legal resolution is one such circumstance. Id.

The third element "requires (a) coercive wrongful acts on the part of the [insurer] and (b) a causal link between the coercive wrongful acts and the circumstances creating economic duress. . . . The party asserting economic duress must establish they were the victim of unlawful or unconscionable pressure." Id.

In her complaint, plaintiff alleged she was in dire financial straits and thereby defeated defendant's motion to dismiss. (Docket 32). Under Fed. R. Civ. P. 12(b)(6), in considering a motion to dismiss, the court must assume all allegations of the complaint are true and determine whether the plaintiff has properly stated a claim for breach of contract. But in considering a

motion for summary judgment under Rule 56, the court must review the developed and uncontested facts. In response to defendant's motion for summary judgment, plaintiff repeatedly asserts she was under financial distress at the time she was settling her UM claim:

1. Toni was recently divorced from Sebastien. (Docket 70, ¶ 5).

2. She incurred almost $9,000 in medical bills from her injuries. Id. at ¶ 9.

3. "State Farm used [her] vulnerability and financial distress, against [her], in coercing [her] to agree to accept only a portion of what [her] UM BI claim [was] worth." Id. at ¶ 11.

However, in response to defendant's motion for summary judgment, the plaintiff must put forth more than allegations. Anderson, 477 U.S. at 256. Plaintiff has not done so. Plaintiff's brief resisting summary judgment makes reference to a number of economic and emotional events which caused distress in her life. See Docket 69, p. 4. Those references were to the following documents:

Exhibits 7 & 8;
Toni Pochat deposition, pp. 65-77; and
Toni Pochat Affidavit ¶¶ 4, 8, 10, 14, 15, 16, and 17.

Id. Plaintiff argues those "financial and mental distress" issues were conveyed to and known by State Farm. Id.

There is nothing in the two letters from plaintiff's attorney, Exhibits 7 and 8 (Dockets 69-8 and 69-9), which gives notice to State Farm of

plaintiff's financial or emotional distress, let alone the type of special, unusual or extraordinary distress contemplated by Dreir and Dunes. Similarly, while the court believes plaintiff was experiencing a level of financial and emotional distress which nearly every person injured in any automobile accident would experience, there is no evidence those factors were disclosed to State Farm and that thereafter defendant took advantage of plaintiff's circumstances.

Plaintiff fails to present any evidence of notice or knowledge by State Farm of economic duress being imposed on her by defendant's handling of her UM claim. All the evidence before the court is to the contrary. Plaintiff had the assistance of competent legal counsel who initiated settlement discussions with State Farm once plaintiff's injuries had reached maximum medical improvement. Those settlement negotiations never reached an impasse. Rather, plaintiff continued to make significant reductions in her settlement demands. To drop plaintiff's demand from $225,000 to $16,500 in the of course just 49 days, during which State Farm was raising its counteroffers (although not at the rate or in the dollar range plaintiff's counsel may have liked), is not evidence of coercion by defendant.

Plaintiff points to Exhibit 31 (Docket 89-6) and the deposition of State Farm claims adjuster Robin Bryant. That exhibit includes the following instructions to adjusters.

<u>Advance Payment of Initial Offer</u>

When dealing with first party claims, it is the Company's philosophy to advance pay the amount of our initial offer when an agreement on the entire amount has not been reached and is not imminent. . . .

What do we mean by Advance Payment of Initial Offer?

The evaluation of personal injury claims in particular, is an art, not a science. Our first offer on first party injury claims should be within the range of value. . . . Since our initial offer indicates a willingness to pay a particular amount, except as provided below, we will advance the amount of our offer. . . . In those rare cases when dispute resolution is needed to conclude a claim, advance payments reduce the effect of any delay associated with the dispute resolution process.

<u>Id.</u> at pp. 2-3. An adjuster is obligated to implement this provision when the carrier and the insured have reached an "impasse." Generally, an impasse occurs when the parties are at "[a] point . . . at which an agreement cannot be reached." <u>Black's Law Dictionary</u> 755 (7th ed., 1999).

The uncontroverted evidence is that the parties never reached an impasse in their settlement negotiations. The movement of both parties toward resolution of plaintiff's UM claim is evident by the timely responses both parties made throughout the process. Additionally, Ms. Bryant's uncontroverted testimony was no impasse occurred. (Docket 89-10, p. 46). Because there was no impasse, the advance payment of State Farm's initial offer instruction to agents, illustrated by Exhibit 31, would not be triggered.

Id. The approach used by Ms. Bryant was a reasonable interpretation of defendant's obligations in this case.

Plaintiff also fails to satisfy the second prong of the economic duress test. "To establish economic duress, [plaintiff is] required to demonstrate that no reasonable alternative existed but to accede to the wrongful and coercive demands of [defendant]." Dunes, 623 N.W.2d at 492. Plaintiff had another option available if she felt State Farm was forcing her into a lowball settlement of her UM claim–that was to declare an impasse and initiate litigation for breach of contract, bad faith, and punitive damages, as she did after accepting the $14,500 settlement check.[9] The parties' statements of material fact permit an objective finding, and only one finding, that there was another, reasonable alternative available to plaintiff. Id.

On the third prong required to establish economic duress, plaintiff failed to present any evidence she was a "victim of unlawful or unconscionable pressure." Dunes, 623 N.W.2d at 490. The full $5,000 medical payments coverage limit was paid toward Toni's medical expenses. Additionally, State Farm made prompt responses to plaintiff's settlement demands and Toni's UM claim was resolved in a timely fashion.

---

[10]Plaintiff's citation to Holmgren v. State Farm Mutual Automobile Insurance Company, 976 F.2d 573 (9th Cir. 1992) is misplaced. Holmgren rejected State Farm's last offer and filed suit. This was the same reasonable alternative remedy available to plaintiff in the instant case.

Plaintiff has failed to show that under any circumstances a jury could find she was a victim of economic duress such that she would be entitled to rescind the settlement of her case. Id. "A decision to merely 'acquiesce' does not rise to the level of coercion required to prove economic duress." Id. at 491.

The court finds plaintiff is bound by her acceptance of the settlement check. While State Farm never made plaintiff's acceptance of the settlement check contingent on plaintiff signing a release, the facts are undisputed the check constituted an accord and satisfaction of defendant's obligation under the policy. Drier, 409 N.W.2d at 359.

Plaintiff has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp, 477 U.S. at 323. In this case, "there is no genuine issue as to any material fact and [State Farm] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

## CONCLUSION

Based on the foregoing discussion, it is hereby

ORDERED that defendant's motion for summary judgment (Docket 56) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1-2) is dismissed with prejudice.

Dated February 23, 2011.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE